UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

DORIS JONES                                          CIVIL ACTION

VERSUS                                              NO. 14-518

CAROLYN W. COLVIN, ACTING                    SECTION "J" (2)
 COMMISSIONER OF SOCIAL SECURITY


## FINDINGS AND RECOMMENDATION

Plaintiff, Doris Jones, seeks judicial review pursuant to Section 405(g) of the Social Security Act (the "Act") of the final decision of the Commissioner of the Social Security Administration ("Commissioner"), denying plaintiff's claim for disability insurance benefits ("DIB") and supplemental security income benefits ("SSI") under Titles II and XVI of the Act. 42 U.S.C. §§ 423, 1382c. This matter was referred to a United States Magistrate Judge pursuant to 28 U.S.C. § 636(b) and Local Rule 73.2(B).

I.    PROCEDURAL HISTORY

Jones filed her applications for DIB and SSI on February 8, 2012, alleging disability beginning December 2, 2011, due to high blood pressure and pain from surgeries. (Tr. 133-45, 156, 160). After her claims were denied at the agency level, she requested a hearing before an Administrative Law Judge (ALJ), which was held on December 20, 2012. On January 29, 2013, the ALJ issued a decision denying the application for benefits. (Tr. 14-22). After the Appeals Council denied plaintiff's

request for review on February 20, 2014, the ALJ's decision became the Commissioner's final decision for purposes of this court's review. (Tr. 1-3).

Plaintiff filed a timely memorandum of facts and law. Record Doc. No. 8. Defendant filed a timely reply memorandum. Record Doc. No. 9.

## II.   STATEMENT OF ISSUES ON APPEAL

Plaintiff contends that the ALJ made the following errors:

A.   Substantial evidence does not support the ALJ's residual functional capacity finding.

B.   The ALJ failed to consider Medical-Vocational Guideline 201.09.

## III.   ALJ'S FINDINGS RELEVANT TO ISSUES ON APPEAL

1.   Jones meets the insured status requirements for DIB through December 31, 2016.

2.   She has severe impairments consisting of status post left nephrectomy,[1] status post surgery for a perforated gastric ulcer, and hypertension.

3.   She has the residual functional capacity to perform medium work, except she can climb ladders, ropes and scaffolds occasionally; can climb ramps and stairs frequently; and must avoid temperature extremes.

4.   Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms. However, her statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible.

---

[1]A nephrectomy is the surgical removal of a kidney. Stedman's Medical Dictionary (27th ed.), on Westlaw at STEDMANS 270330.

5.      Jones can return to her past relevant work as a janitorial custodian and housekeeper.

6.      She has not been under a disability from December 2, 2011, the alleged onset date, through the date of the decision.

(Tr. 16-22).

IV.    ANALYSIS

A.    Standards of Review

The function of this court on judicial review is limited to determining whether there is substantial evidence in the record to support the final decision of the Commissioner as trier of fact and whether the Commissioner applied the appropriate legal standards in evaluating the evidence. Richard ex rel. Z.N.F. v. Astrue, 480 F. App'x 773, 776 (5th Cir. 2012) (citing Perez v. Barnhart, 415 F.3d 457, 461 (5th Cir. 2005)); Stringer v. Astrue, 465 F. App'x 361, 363 (5th Cir. 2012) (citing Waters v. Barnhart, 276 F.3d 716, 716 (5th Cir. 2002)). Substantial evidence is more than a scintilla but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. Richardson v. Perales, 402 U.S. 389, 401 (1971); Richard ex rel. Z.N.F., 480 F. App'x at 776; Stringer, 465 F. App'x at 363-64; Perez, 415 F.3d at 461. This court may not reweigh the evidence in the record, try the issues de novo or substitute its judgment for the Commissioner's, even if the evidence weighs against the Commissioner's decision. Halterman ex rel. Halterman v. Colvin, No. 12-31099, 2013 WL 5913945, at *2 (5th Cir. May 9, 2013) (citing Newton

v. Apfel, 209 F.3d 448, 452 (5th Cir. 2000)); Stringer, 465 F. App'x at 364. The Commissioner, rather than the courts, must resolve conflicts in the evidence. Luckey v. Astrue, 458 F. App'x 322, 324 (5th Cir. 2011) (citing Selders v. Sullivan, 914 F.2d 614, 617 (5th Cir. 1990)); Newton, 209 F.3d at 452.

The ALJ is entitled to make any finding that is supported by substantial evidence, regardless of whether other conclusions are also permissible. See Arkansas v. Oklahoma, 503 U.S. 91 (1992). Despite this court's limited function, it must scrutinize the record in its entirety to determine the reasonableness of the decision reached and whether substantial evidence supports it. Joubert v. Astrue, 287 F. App'x 380, 382 (5th Cir. 2008) (citing Perez, 415 F.3d at 461). Any findings of fact by the Commissioner that are supported by substantial evidence are conclusive. Ray v. Barnhart, 163 F. App'x 308, 311 (5th Cir. 2006) (citing Perales, 402 U.S. at 390); Perez, 415 F.3d at 461.

To be considered disabled and eligible for SSI or DIB,[2] plaintiff must show that she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A). The Commissioner has promulgated regulations

---

[2]The relevant law and regulations governing claims for DIB and SSI are identical. Carmon v. Barnhart, 81 F. App'x 410, 411 n.1 (3d Cir. 2003) (citing Greenspan v. Shalala, 38 F.3d 232, 236 (5th Cir. 1994)); Baltierra v. Chater, 70 F.3d 1268, 1995 WL 696740, at *1 (5th Cir. Oct. 19, 1995) (citing Haywood v. Sullivan, 888 F.2d 1463, 1467 (5th Cir. 1989)); Bryan v. Halter, 252 F.3d 1357, 2001 WL 422878, at *1 (5th Cir. Apr. 5, 2001) (citing Haywood, 888 F.2d at 1467).

that provide procedures for evaluating a claim and determining disability. 20 C.F.R. §§ 404.1501 to 404.1599 & appendices, §§ 416.901 to 416.998 (2012). The regulations include a five-step evaluation process for determining whether an impairment prevents a person from engaging in any substantial gainful activity.[3] Id. §§ 404.1520, 416.920; Alexander v. Astrue, 412 F. App'x 719, 720 (5th Cir. 2011) (citing Audler v. Astrue, 501 F.3d 446, 447 (5th Cir. 2007)); Perez, 415 F.3d at 461. The five-step inquiry terminates if the Commissioner finds at any step that the claimant is or is not disabled. Id.

The claimant has the burden of proof under the first four parts of the inquiry. If she successfully carries this burden, the burden shifts to the Commissioner to show that

---

[3]The five-step analysis requires consideration of the following:

First, if the claimant is currently engaged in substantial gainful employment, he or she is found not disabled. 20 C.F.R. §§ 404.1520(b), 416.920(b).

Second, if it is determined that, although the claimant is not engaged in substantial employment, he or she has no severe mental or physical impairment which would limit the ability to perform basic work-related functions, the claimant is found not disabled. Id. §§ 404.1520(c), 416.920(c).

Third, if an individual's impairment has lasted or can be expected to last for a continuous period of twelve months and is either included in a list of serious impairments in the regulations or is medically equivalent to a listed impairment, he or she is considered disabled without consideration of vocational evidence. Id. §§ 404.1520(d), 416.920(d).

Fourth, if a determination of disabled or not disabled cannot be made by these steps and the claimant has a severe impairment, the claimant's residual functional capacity and its effect on the claimant's past relevant work are evaluated. If the impairment does not prohibit the claimant from returning to his or her former employment, the claimant is not disabled. Id. §§ 404.1520(e), 416.920(e).

Fifth, if it is determined that the claimant cannot return to his or her former employment, then the claimant's age, education, and work experience are considered to see whether he or she can meet the physical and mental demands of a significant number of jobs in the national economy. If the claimant cannot meet the demands, he or she will be found disabled. Id. §§ 404.1520(f)(1), 416.920(f)(1). To assist the Commissioner at this stage, the regulations provide certain tables that reflect major functional and vocational patterns. When the findings made with respect to a claimant's vocational factors and residual functional capacity coincide, the rules direct a determination of disabled or not disabled. Id. § 404, Subpt. P, App. 2, §§ 200.00-204.00, 416.969 ("Medical-Vocational Guidelines").

other substantial gainful employment is available in the national economy that the claimant is capable of performing. When the Commissioner shows that the claimant is capable of engaging in alternative employment, the burden of proof shifts back to the claimant to rebut this finding. Alexander, 412 F. App'x 720-21; Perez, 415 F.3d at 461.

The court weighs four elements of proof when determining whether there is substantial evidence of disability: "'(1) objective medical facts; (2) diagnoses and opinions of treating and examining physicians; (3) the claimant's subjective evidence of pain and disability; and (4) the claimant's age, education, and work history.'" Chrisner v. Astrue, 249 F. App'x 354, 356 (5th Cir. 2007) (quoting Wren v. Sullivan, 925 F.2d 123, 126 (5th Cir. 1991)); accord Perez, 415 F.3d at 463.

B.    Factual Background

Jones testified that her last surgery, which was an exploratory laparotomy[4] and a patch for a hole in her stomach, occurred on December 2, 2011, and that no physician has recommended additional surgery since then. She said she was seeing her primary care doctor at St. Thomas Clinic every three months for her blood pressure, but had not seen him for about seven months as of the hearing date. (Tr. 31). Plaintiff stated that she

---

[4]A laparotomy is a surgical incision into the abdominal wall, especially into the flank. The American Heritage Dictionary of the English Language (Houghton Mifflin Co. 4th ed. 2000, updated 2009), http://www.thefreedictionary.com/laparotomy (visited Sept. 16, 2014).

takes medications for her blood pressure. Her attorney added that Jones takes HCTZ,[5] amlodipine[6] and pravastatin[7] for her blood pressure and that she has an unfilled prescription for Prilosec[8] for stomach pain. (Tr. 32).

Jones testified that she has a prescription from a Charity Hospital clinic doctor, whom she last saw in September 2012. (Tr. 33). She said she sees the doctor every three months for her kidney and stomach problems. (Tr. 33-34). When she could not recall the doctor's name or clinic, her attorney stated that she is treated at the genitourinary clinic.

Plaintiff said she saw her surgeon for a follow up appointment in September 2012 and was told not to take any other kind of medication. She stated that she is "stuck on one kind of medicine." (Tr. 34). She said she is supposed to avoid "Elavils, . . . something like that," but was not sure what medicine she should avoid.

---

[5]Hydrochlorothiazide (HCTZ) is a diuretic used to treat high blood pressure and other conditions that require the elimination of excess fluid from the body, including congestive heart failure, cirrhosis of the liver, corticosteroid and estrogen therapy, and kidney disorders. PDRhealth (2014 PDR Network, LLC), http://www.pdrhealth.com/drugs/hydrochlorothiazide (visited Sept. 16, 2014).

[6]Norvasc (generic name: amlodipine) is used to treat high blood pressure and chest pain in patients with coronary artery disease. Norvasc lowers high blood pressure by relaxing the blood vessels and allowing blood to flow through with less resistance. Id., http://www.pdrhealth.com/drugs/norvasc (visited Sept. 16, 2014).

[7]Pravachol (generic name: pravastatin) is used to lower cholesterol when a low-fat diet is not enough. Id., http://www.pdrhealth.com/drugs/pravachol (visited Sept. 16, 2014).

[8]Prilosec (generic name: omeprazole) is used to treat stomach and duodenal ulcers, gastroesophageal reflux disease and erosive esophagitis. It is also used for long-term treatment of conditions in which the stomach makes too much acid and to eliminate bacteria that often cause ulcers. Id., http://www.pdrhealth.com/drugs/prilosec (visited Sept. 16, 2014).

Jones testified that she is the primary caregiver for her two grandchildren, ages 11 and 16, who live with her. She said her house is on one level, but she has to go up steps to get there. (Tr. 35). She stated that she does household chores, including making her bed, washing dishes by hand, cooking and grocery shopping. She said she bathes and dresses herself. She testified that she does not have a driver's license and that her son takes her when she needs to go somewhere.

Plaintiff said she recently adopted a lost puppy. She stated that she feeds the dog, or her grandchildren will do it when they are home. (Tr. 36-37). She said that her landlord cuts the grass. She testified that her son or grandchildren unload the groceries from the car after she shops. She stated that she makes sandwiches and cooks things like jambalaya and red beans and rice, but that she buys [inaudible] items pre-cut, rather than chopping them herself. (Tr. 37-38).

Jones testified that she went to the seventh grade in school and "[can]not really" read and write. She said she used to like exercising and walking, but can no longer do that. She stated that, in a typical day, she gets up, goes back to bed, watches television and tries to do a little exercise. She said she watches television if she is not in pain, but otherwise she stays in bed. She testified that she walks one and one-half blocks to the school bus stop with her grandchildren each morning.

Plaintiff said that her last job was full-time janitorial work for Sodexo and that she stopped working because of her second surgery. She testified that she went back to work

after her first surgery, a nephrectomy, in August 2011,[9] but could not perform the work because of pain. She said she got sick again and had stomach surgery. (Tr. 39-40). She stated that her doctor told her not to return to work after her second, abdominal surgery because she could have a relapse. (Tr. 40).

Jones testified that she can make her bed and wash the dishes, but cannot stoop low, clean bathtubs or bend over to do gardening and pick up plants, as she used to do. (Tr. 41). She said she used to ride a bike and exercise at home because she felt energized when she exercised. She stated that she likes to work on 5,000-piece puzzles, but can no longer sit for three to four hours to work a puzzle. She said she feels pain if she sits for more than 30 to 40 minutes. She testified that she can no longer dance because she "hurts too fast. I might get a cramp in my stomach." (Tr. 42-43).

Plaintiff stated that she used to walk one to two miles and would rather walk than take the bus. She said she used to walk home from work, from St. Bernard Avenue to Jackson Avenue, but now can walk only about four blocks until she has pain in her left and right kidney areas. She stated that she can stand for 40 minutes before she feels pain in both of her surgical areas. She testified that she has trouble with stairs because she is breathing hard by the time she gets to the top. She stated that she feels pain when she is lying down and "[i]t makes me make sounds." (Tr. 44). She said she lies down for three or more hours on a typical day and is in pain during that time.

_____

[9]The nephrectomy was actually performed on September 14, 2011. (Tr. 255-58).

Jones testified that she tried going back to work after her first surgery, but could not do the job because it involved stooping and picking up boxes and bags, which is difficult for her. She said she sometimes gets a "big cramp" when she tries to put on her pants or take them off, and the cramp "brought me to the floor, in pain." (Tr. 45). Jones stated that she takes Tylenol for pain. She said she received a prescription for Prilosec for pain, but has no other prescription pain medication. (Tr. 46).

C.    Vocational Expert Testimony

A vocational expert, Katrina S. Virden, testified at the hearing that Jones worked as a janitor at a school from 1999 to 2005 and at another janitorial job from 2006 to 2011. Virden stated that these are medium, unskilled jobs. She said that plaintiff worked as a housekeeper from 1998 to 1999, which is light, unskilled work. (Tr. 47).

The ALJ posed a hypothetical of a person with plaintiff's age, education and past work experience who can perform medium work except that she can only occasionally climb ladders, ropes and scaffolds; can frequently climb stairs and ramps; and must avoid temperature extremes. Virden testified that such an individual could perform all of plaintiff's past relevant work. (Tr. 46).

The ALJ modified the hypothetical to add that the person cannot climb ladders, ropes and scaffolds and that climbing of stairs and ramps is limited to one flight at a time on a sustained basis. (Tr. 47-48). The vocational expert testified that this would not change the person's ability to perform the past relevant work.

Plaintiff's attorney modified the ALJ's first hypothetical to include a limitation that the individual had to lie down for more than two hours during an eight-hour work day. Virden testified that such a person could not perform any work. The attorney then modified the ALJ's second hypothetical to include a limitation that the individual suffers severe pain that frequently interferes with her ability to concentrate on job tasks. Virden stated that such a person could not perform any jobs. (Tr. 48).

D.     Medical Evidence

I have reviewed the medical records in evidence and the ALJ's summary of the medical evidence. (Tr. 18-21). I find the ALJ's summary of the medical evidence substantially correct and incorporate it herein by reference, with the modifications, corrections and highlights noted below.

E.     Plaintiff's Appeal

1.     Substantial evidence supports the ALJ's residual functional capacity findings.

The ALJ found at the fourth step of the sequential evaluation that Jones is capable of performing her past work as a janitorial custodian and housekeeper. Plaintiff bears the burden of proving that she suffers from a disability under the first four parts of the sequential inquiry. Perez, 415 F.3d at 461. She contends that the ALJ erred by failing to factor into his analysis of her residual functional capacity her pain resulting from two surgeries to (1) remove a kidney and (2) repair a perforated gastric ulcer. Jones argues

that her severe pain interferes with her concentration, persistence and pace for completing tasks and limits her ability to stand and/or sit for long periods, so that her residual functional capacity is reduced to sedentary. A finding that she is limited to sedentary work would benefit her because Medical-Vocational Guideline 201.09 directs a finding of disabled for a person with her age, education and work experience who can only perform sedentary jobs.

Substantial evidence supports the ALJ's residual functional capacity findings. His summary of the medical evidence was thorough and accurate. Plaintiff's argument regarding limitations caused by pain relies entirely on her own testimony. As the ALJ stated, the record as a whole does not substantially support the subjective complaints and functional limitations that Jones alleges are caused by her medical impairments.

"While pain can be disabling, it is not an automatic ground for entitlement to disability benefits. Pain is recognized as a disabling condition under the Act only where it is constant, unremitting, and wholly unresponsive to therapeutic treatment. The test for disability under the Act is not satisfied merely because Plaintiff cannot work without some pain or discomfort." Alvarez v. Colvin, No. 3:12-CV-03569-BK, 2013 WL 1858197, at *7 (N.D. Tex. May 3, 2013) (citing Hames v. Heckler, 707 F.2d 162, 166 (5th Cir. 1983)); accord Nugent v. Astrue, 278 F. App'x 423, 427 (5th Cir. 2008) (citing Cook v. Heckler, 750 F.2d 391, 395 (5th Cir. 1985)); Beck v. Barnhart, 205 F. App'x

207, 212 (5th Cir. 2006) (citing <u>Cook</u>, 750 F.2d at 395); <u>Chambliss v. Massanari</u>, 269 F.3d 520, 522 (5th Cir. 2001); <u>Selders</u>, 914 F.2d at 618.

It is within the ALJ's discretion to determine the disabling nature of a claimant's pain, and the ALJ's determination is entitled to considerable deference. <u>Jenkins v. Astrue</u>, 250 F. App'x 645, 647 (5th Cir. 2007) (citing <u>Chambliss</u>, 269 F.3d at 522). Whether a claimant is able to work despite some pain is within the province of the ALJ, and the determination should be upheld if supported by substantial evidence. <u>Id.</u> (citing <u>Chambliss</u>, 269 F.3d at 522; <u>Falco v. Shalala</u>, 27 F.3d 160, 164 (5th Cir. 1994)).

"'The mere presence of some impairment is not disabling per se. Plaintiff must show that she was so <u>functionally impaired</u> . . . that she was precluded from engaging in any substantial gainful activity.'" <u>Bordelon v. Astrue</u>, 281 F. App'x 418, 422 (5th Cir. 2008) (quoting <u>Hames</u>, 707 F.2d at 165) (emphasis added); <u>accord</u> <u>Anthony v. Sullivan</u>, 954 F.2d 289, 293 (5th Cir. 1992).

Determining the credibility of plaintiff's subjective evidence of pain and disability is a necessary part of the ALJ's consideration of the evidence. <u>Luckey</u>, 458 F. App'x at 326 (citing <u>Scott v. Heckler</u>, 770 F.2d 482, 485 (5th Cir. 1985)); <u>Perez</u>, 415 F.3d at 462. The ALJ is bound to explain his reasons for rejecting a claimant's subjective complaints, but "is not required to 'follow formalistic rules in his articulation.'" <u>Hernandez v. Astrue</u>, 278 F. App'x 333, 339 (5th Cir. 2008) (quoting <u>Falco</u>, 27 F.3d at 164). The ALJ has the responsibility to evaluate the credibility of witnesses, <u>Masterson v. Barnhart</u>, 309

F.3d 267, 272 (5th Cir. 2002), and "credibility conclusions are 'precisely the kinds of determinations that the ALJ is best positioned to make.'" Spruill v. Astrue, 299 F. App'x 356, 358 (5th Cir. 2008) (quoting Falco, 27 F.3d at 164). Thus, the ALJ's credibility evaluation is entitled to considerable deference by this court. McKnight v. Astrue, 340 F. App'x 176, 181 (5th Cir. 2009) (citing Newton, 209 F.3d at 459); Bedford v. Astrue, 236 F. App'x 957, 962 (5th Cir. 2007) (citing Newton, 209 F.3d at 459). The ALJ is required only to review the entire record, resolve conflicts in the evidence and state specific reasons for his credibility findings, supported by the evidence. Luckey, 458 F. App'x at 324; Giles v. Astrue, 433 F. App'x 241, 249 (5th Cir. 2011); Newton, 209 F.3d at 452.

The ALJ explained why he found that Jones's subjective symptoms and alleged limitations were not entirely credible and were inconsistent with the evidence as a whole. The ALJ incorporated into his residual functional capacity assessment all the functional limitations that he found credible. Plaintiff's testimony, which is not substantially supported by the medical evidence, is insufficient to establish any additional limitations.

Subjective complaints of pain or other symptoms must be corroborated by objective medical evidence. Quijas v. Astrue, 298 F. App'x 391, 393 (5th Cir. 2008) (citing Chambliss , 269 F.3d at 522). Subjective complaints may be discounted when the alleged symptoms are not consistent with the objective evidence. Brown v. Astrue, 344 F. App'x 16, 21 (5th Cir. 2009); Hernandez, 278 F. App'x at 340; Dunbar v. Barnhart,

330 F.3d 670, 672 (5th Cir. 2003). Plaintiff's testimony that she suffers severe pain resulting from her surgeries is not substantially supported by the medical evidence.

Jones was diagnosed and treated for renal cell carcinoma by Harold A. Fusilier, M.D., at Medical Center of Louisiana New Orleans in July through September 15, 2011, before her alleged onset date. (Tr. 248-60). After the left nephrectomy, Jones had an allergic reaction to medication, which caused facial swelling, but resolved within a day. (Tr. 261-65). She required no additional treatment for renal cell carcinoma, post-surgical complications or related conditions after her nephrectomy. When she followed up with Dr. Fusilier post-operatively on October 14, 2011, she was doing very well, not using any narcotic pain medication and had returned to work. (Tr. 267-68). Plaintiff continued to work until she was admitted to the Medical Center of Louisiana on December 3, 2011, where Heather King, M.D., performed an exploratory laparotomy and Graham patch[10] for a perforated prepyloric[11] gastric ulcer. (Tr. 269-72).

---

[10]A Graham patch is also known as an omental patch. The omentum is a fold of peritoneum (the serous sac that lines the abdominal cavity) passing from the stomach to another abdominal organ. Stedmans Medical Dictionary omentum (27th ed. 2000), on Westlaw at STEDMANS 282350; id. peritoneum at STEDMANS 307540. In this procedure, "[a] patch of omentum is brought without tension and positioned over the perforation, and the sutures are successively tied . . . across the omental patch to anchor the omental graft in place . . . ." Razvan C. Opreanu, MD, MS, Omental (Graham) Patch (WebMD LLC, updated Sept. 12, 2013), http://emedicine.medscape.com/article/1892935-overview#a15.

[11]Prepyloric means anterior to or preceding the pylorus. The pylorus is the muscular tissue surrounding and controlling the outlet of the stomach. Id. prepyloric, at STEDMANS 331340; id. pylorus, at STEDMANS 343860.

Jones recovered well from both surgeries and had no other reported complaints. An upper gastrointestinal series and a CT scan of her abdomen and pelvis six days after the laparotomy on December 9, 2011, were apparently unremarkable, as there was no additional treatment scheduled or recommended. Subsequent physical examinations were essentially normal. Plaintiff's blood pressure was controlled with medication. She was told to resume normal activity as tolerated. (Tr. 261-62, 264, 267, 280-82, 311-12). Another CT scan of her abdomen and pelvis on April 2, 2012 revealed no abnormalities. On April 13, 2012, Dr. Fusilier told Jones to return annually for an abdominal CT scan and gave her an appointment (without specifying the date) to follow up with General Surgery for postoperative followup of her repaired gastric ulcer. (Tr. 319, 321-22). No such followup visit at the Medical Center of Louisiana appears in the records.

In addition to plaintiff's chronic hypertension, her treating physician at St. Thomas Clinic, Khalil Imsais, M.D., diagnosed generalized osteoarthritis and chronic diastolic congestive heart failure on March 1, 2012. Although these conditions might be expected to cause some pain, the ALJ did not find, and plaintiff does not argue, that either one is a severe impairment. Dr. Imsais's notes do not mention any pain or other symptoms associated with either diagnosis. (Tr. 311-12). No objective tests in the record support the diagnosis of osteoarthritis or indicate its severity. As to congestive heart failure, an echocardiogram on May 25, 2011 was normal. (Tr. 314).

The ALJ accorded great weight to the opinions of internist Miljana Mandich, M.D., who reviewed plaintiff's treatment records and examined her on March 14, 2012 at the request of the Commissioner. Jones reported no complaints of pain or gastrointestinal or genitourinary complaints. She took only over-the-counter medications for occasional headaches. All physical examination findings were within normal limits, except that plaintiff's blood pressure was elevated because she had not taken her medications that day. Her abdomen was soft and non-tender without masses. She had full range of motion in her back, neck and joints and was neurologically intact. Her gait and station were normal. She ambulated without difficulty, could walk on heels and toes, and was able to get on and off the examining table, squat and rise without self-support. Dr. Mandich diagnosed hypertension, status post left nephrectomy because of renal cell carcinoma in September 2011 and status post laparotomy because of a perforated gastric ulcer in December 2011. Dr. Mandich concluded that Jones had "no significant complaints" and an unremarkable physical examination. (Tr. 297-300). Dr. Mandich's findings are consistent with plaintiff's treatment records as a whole and are substantial evidence on which the ALJ could appropriately rely.

The medical evidence does not corroborate plaintiff's testimony that she suffered from severe pain or that any doctor told her not to return to work because she might suffer a relapse. According to the medical records, Jones did not seek treatment for pain or any other complaints after her second surgery. She followed up with her treating

doctors a couple of times and was doing well.  At the hearing on December 20, 2012, she

testified that she had not seen her primary care physician for about seven months.  The

last progress note from Dr. Imsais is dated March 1, 2012, so it had actually been nine

months since she saw him.

Jones testified that she saw her surgeon in September 2012.  However, the medical

records show that she last saw Dr. Fusilier on April 13, 2012, and there is no evidence

that she ever had a followup visit with Dr. King, the surgeon who performed her

laparotomy.  Her briefs to the Appeals Council (Tr. 218) and in this court, Record Doc.

No. 8 at pp. 3-4, purport to summarize medical records from LSU Interim Hospital from

some unspecified dates in September 2012, without identifying which doctor she saw.

Although Jones asserts in her memorandum that she submitted these medical records to

the Appeals Council, id. at p. 4 n.1, there is no evidence that such records were ever sent.

Jones has neither shown good cause for her failure to incorporate the evidence into the

record nor that the evidence is new, material and could reasonably be expected to change

the outcome, so as to justify a remand to the Commissioner.  42 U.S.C. § 405(g); Ferrari

v. Astrue, 435 F. App'x 314, 314-15 (5th Cir. 2010); Joubert v. Astrue, 287 F. App'x

380, 383 (5th Cir. 2008); Hunter v. Astrue, 283 F. App'x 261, 262 (5th Cir. 2008);

Martinez v. Astrue, 252 F. App'x 585, 587 (5th Cir. 2007).

Jones testified that she used Tylenol for pain, had a prescription for Prilosec that

she had not filled since receiving it three months earlier, and had not received any

prescriptions for pain medication. A claimant's lack of need for prescription medication is a relevant factor to consider in determining the severity of an alleged impairment and may be used in conjunction with the medical reports to discount her complaints of disabling pain or other limitations. Doss v. Barnhart, 137 F. App'x 689, 690 (5th Cir. 2005); Anthony, 954 F.2d at 295; Griego v. Sullivan, 940 F.2d 942, 945 (5th Cir. 1991); Villa v. Sullivan, 895 F.2d 1019, 1024 (5th Cir. 1990). The ALJ appropriately noted this factor when weighing plaintiff's credibility.

Finally, in assessing plaintiff's credibility and residual functional capacity, the ALJ properly considered her "daily activities in determining that her impairments were not totally debilitating and did not prevent her from performing significant work activities." Jones v. Barnhart, 112 F. App'x 996, 2004 WL 2634534, at *1 (5th Cir. Nov. 19, 2004) (citing Leggett v. Chater, 67 F.3d at 565 n.12 (5th Cir. 1995); Chaparro v. Bowen, 815 F.2d 1008, 1011 (5th Cir. 1987)). "Indeed, any 'inconsistencies between [plaintiff's] testimony about [her] limitations and [her] daily activities were quite relevant in evaluating [her] credibility.'" Casanova v. Astrue, 327 F. App'x 464, 466 (5th Cir. 2009) (quoting Reyes v. Sullivan, 915 F.2d 151, 155 (5th Cir. 1990)).

Thus, the Fifth Circuit has routinely affirmed an ALJ's finding that a plaintiff is not entirely credible based on her admission that she "can cook, do housework, and drive," Price v. Astrue, 401 F. App'x 985, 987 (5th Cir. 2010) (citing Leggett, 67 F.3d at 565 n.12), or that he "was able to care for his three daughters [ages 9, 11, and 13],

perform household chores, cut the grass in small increments, and even walk up to six blocks at a time." Leggett, 67 F.3d at 565. In the instant case, Jones testified that she is the primary caregiver for her grandchildren, walks them to the bus stop daily, performs multiple household chores, shops for groceries, dresses and bathes herself, does a little exercise and takes care of a puppy. The ALJ properly considered that these activities of daily living undermined plaintiff's credibility.

The ALJ considered the record as a whole in determining that Jones's subjective complaints were not fully credible. Hoelck v. Astrue, 261 F. App'x 683, 686 (5th Cir. 2008) (citing Leggett, 67 F.3d at 565; Hollis v. Bowen, 837 F.2d 1378, 1384-85 (5th Cir. 1988)). Having done so, the ALJ's findings regarding her residual functional capacity are substantially supported by the evidence as a whole, including particularly the opinions of the consultative examiner, Dr. Mandich, and plaintiff's treating physicians and surgeons between 2011 and April 2012. The ALJ assigned great weight to all of these opinions, which are consistent and well supported by objective medical evidence and the other evidence of record. "The ALJ found the medical evidence more persuasive than the claimant's own testimony. These are precisely the kinds of determinations that the ALJ is best positioned to make." Falco, 27 F.3d at 164.

Accordingly, this assignment of error lacks merit.

## 2. Medical-Vocational Guideline 201.09 does not apply.

The ALJ found that Jones has the residual functional capacity to perform medium work, with the exceptions noted in his decision. Jones argues that, if he had properly assessed her residual functional capacity as sedentary, Rule 201.09 of the Medical-Vocational Guidelines would direct a finding of disabled. Rule 201.09 provides that a person closely approaching advanced age (age 50-54) with limited or less education, who has only unskilled or no work experience and is restricted to sedentary work, is disabled. 20 C.F.R. pt. 404, subpt. P, app. 2, § 201.09.

As discussed in the preceding section, the ALJ's residual functional capacity determination is supported by substantial evidence. Therefore, Rule 201.09 is not applicable and the ALJ did not err by failing to use it.

## CONCLUSION

The ALJ's residual functional capacity finding is supported by substantial evidence and the ALJ properly decided not to apply Rule 201.09 of the Medical-Vocational Guidelines.

## **RECOMMENDATION**

Accordingly, IT IS RECOMMENDED that plaintiff's complaint be DISMISSED WITH PREJUDICE.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within fourteen

(14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object. <u>Douglass v. United Servs. Auto. Ass'n</u>, 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc) (citing 28 U.S.C. § 636(b)(1)).[12]

New Orleans, Louisiana, this __19th__ day of September, 2014.

JOSEPH C. WILKINSON, JR.
UNITED STATES MAGISTRATE JUDGE

---

[12]<u>Douglass</u> referred to the previously applicable ten-day period for the filing of objections. Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend the period to fourteen days.